

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

In re

HUGO MARTINEZ,

    Debtor.

_____

JUAN TORRES and
NORMA TORRES,

    Plaintiffs.

v.

HUGO MARTINEZ, aka Carlos H.
Martinez aka Hugo Carlos
Martinez,

    Defendant.

Case No. RS 07-12037 DN
Adv. No. RS 07-01140 DN

Chapter 7

MEMORANDUM OF DECISION

    Plaintiffs, Juan and Norma Torres, filed a complaint against the debtor, Hugo Martinez, to determine the dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(2)(A) and § 523(a)(6).[1] Trial was held on February 6 and 7, 2008. The Court has considered the documentary evidence, testimony of witnesses, including an assessment of the credibility of the witnesses, arguments and supplemental briefing by counsel and

---

[1] Unless otherwise indicated all Code, chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330.

makes the following findings and conclusions pursuant to Fed. R. Civ. P. 52 as incorporated by Fed. R. Bank.P. Rule 7052:

## I. Findings of Fact

1. Mr. Martinez and Mr. and Mrs. Torres entered into a Contract on October 15, 2005, whereby the parties agreed that, in exchange for $100,000, Mr. Martinez would construct an addition to the Torres' residence located in Whittier, California (the "Property"), and the construction would conform to the drawings as specified in the blueprints (the "Project").

2. Conflicting testimony was presented by Mrs. Torres and Mr. Martinez as to whether Mr. Martinez represented that he was a licensed contractor. Mrs. Torres testified that, prior to executing the Contract, she inquired of Mr. Martinez as to whether he was a licensed contractor and he responded in the affirmative. When asked for his license, he stated that he did not have it with him. Mr. Martinez denied that he made the representation that he was a licensed contractor. I find the testimony of Mrs. Torres to be credible on this issue and find that, prior to the time the Contract was executed, Mr. Martinez represented to Mr. and Mrs. Torres that he was a licensed contractor. I do not find the testimony of Mr. Martinez to be credible.

3. I find that Mr. Martinez knew he was not a licensed contractor at the time he represented otherwise and did so with the intent to deceive for the purpose of fraudulently inducing Mr. and Mr. Martinez to enter into the Contract so that he could obtain payment. The Contract

was handwritten in Spanish by Mr. Martinez who signed the contract as "C. Hugo Martinez." He testified that Carlos Martinez was the name of his cousin, an alias which he used in 1988 and for a period of six years thereafter. He denied that he continues to use the alias or used it in 2005, yet failed to explain why he executed the Contract as C. Hugo Martinez. He further testified that he continues to do business with Grove Lumber under the name of Carlos Martinez and has not attempted to correct the records because he deals in cash. The document on which the Contract was written is a form entitled "Contractor's Invoice." Mr. Martinez placed his driver's license number on the Contract under the place designated on the form as "Your Work Order No." I find that this act was in furtherance of the fraudulent representation that he was a licensed contractor. Mr. and Mr. Torres had no prior experience with home improvement contracts and justifiably relied upon Mr. Martinez's representation that he was a licensed contractor in agreeing to enter into the Contract and pay him the Contract price of $100,000 to complete the addition to their Property.

4. Mr. and Mrs. Torres, in the company of Mr. Martinez, obtained various permits as the owners/builders on the Project.

5. The Contract does not contain a date of completion, nor does it contain a provision stating that the work will be performed in a substantial workmanlike manner. The testimony of the parties reflects that Mr. and Mrs. Torres

sought to modify the Contract by sending Mr. Martinez a certified letter and inserting a date of completion. Mr. Martinez intentionally did not receive the letter, and the letter reflects that neither party signed the document. Accordingly, any attempt at modification failed, and I do not find that Mr. Martinez made any express representation to Mr. and Mrs. Torres that he would complete the Project in a substantial workmanlike manner nor that he would complete the Project by the summer of 2006.

5. The Contract terms indicated that payment would be made as the work progressed. From October of 2005 through the spring of 2006, Mr. Martinez sought and obtained payments from Mr. and Mr. Torres representing that the payments were for materials and/or labor for the Project as it progressed. A portion of the work was completed by October of 2006. During the preceding months, Mr. Martinez could not be located by Mr. and Mrs. Torres and the work had not progressed much although Mr. Martinez had been paid large amounts by Mr. and Mrs. Torres. Mr. Martinez testified that during this time he began working for a company during the daytime hours and assisted his father-in-law in at least one other project on the evenings and weekends. Mr. Martinez would only appear at the Property for the purpose of collecting payment stating that the payment was for labor and materials for the Project. Mr. and Mr. Torres continued to make the progress payments to Mr. Martinez in the hope that he would complete the Project. Frustrated in their attempts to locate Mr. Martinez, and when his promises to

complete the Project failed to materialize, Mr. and Mrs. Torres became dissatisfied.

6. Mr. and Mrs. Torres obtained loans in the approximate amount of $100,000 for the purpose of completing the work on the Project. In October of 2006, they took over work on the Project because they believed that Mr. Martinez had abandoned the job. During this time, Ricky Martinez, brother and co-worker of Mr. Martinez, installed windows at the Property and collected an additional payment from Mr. and Mrs. Torres, unbeknownst to Mr. Martinez. Mr. and Mrs. Torres filed a lawsuit in state court against Mr. Hugo Martinez for breach of contract, fraud and conversion arising from the Project ("State Court Action"). Default was entered against Mr. Martinez in the State Court Action in January 2007, and Mr. Martinez filed a petition under Chapter 7 on April 16, 2007.

7. Mr. Martinez produced receipts at trial for the purchase of materials for other jobs not associated with the Project, which included receipts that pre-dated the commencement of the Project. I find that Mr. Martinez produced these receipts in an effort to falsely represent that they were receipts of expenditures for the Project; Mr. and Mrs. Torres proved otherwise at trial. Mr. Martinez testified that he had several employees working on the Project, who were paid cash from the funds received from Mr. and Mrs. Torres, yet Mr. Martinez failed to provide any documentation or witnesses to substantiate this claim for such expenditures associated with the Project. I find that no

credible evidence was presented by Mr. Martinez to prove that he paid any person for performing work on the Project that benefitted Mr. and Mrs. Torres. Accordingly, about $88,000 was diverted by Mr. Martinez and the use and/or whereabouts of the funds are unknown.

8. Mr. and Mrs. Torres, along with various contractors, family and friends completed the Project, which included obtaining approval from the City of Whittier for permits, and in some instances, re-doing work which had been completed by Mr. Martinez in a manner which failed to comply with municipal building codes. Mr. Martinez contends that the fact that Mr. and Mrs. Torres hired certain contractors, who were also unlicensed, following his abandonment of the Project, demonstrates that, even if he did represent that he was a licensed contractor, Mr. and Mrs. Torres did not rely upon the representation as it was their practice to hire persons to perform work in the most cost effective manner, i.e., an unlicensed contractor as opposed to one who is licensed. I reject this assertion. Mrs. Torres testified that after Mr. Martinez had abandoned the Project, left the Property in shambles, and taken their money, they had minimal funds available to complete the work and were forced to do much of the work themselves. They were assisted by family and friends, including persons and tradesmen who worked for companies but who were not licensed. The conduct of the Torres' following the abandonment by Mr. Martinez does not vitiate the fact that they justifiably relied on his false representation,

which he knew was false and the fact that he intended to deceive them; and the loss and damage suffered by Mr. and Mrs. Torres was the proximate result of the representation made by Mr. Martinez. Mr. and Mrs. Torres did not solicit a licensed contractor to complete the work, which is understandable because they had already been defrauded by one person who claimed to be a licensed contractor. Further, their new approach was different in that the plumbing and other relatively minor parts of the project that they had completed were different in scope from the full Contract addition.

9. The homeowners were damaged by the misrepresentation because a licensed contractor would comply with the requirements that a project be paid for and expenditures be applicable for that project. Here, Mr. Martinez did not maintain a separate account for the Project.

10. When Mr. Martinez took a new full-time job and other projects, he continued to extract money from Mr. and Mrs. Torres for the fallacious progress on the Project. It is a reasonable inference from his later conduct in (a) diverting his time and attention to other interests, and (b) continuing to take payments from Mr. and Mrs. Torres that his intent from the beginning was to defraud them. An honest person faced with the inability to complete this ambitious Project as contracted would not attempt to disappear, as he did, and would try to work out a cancellation and refund arrangement, neither of which course was his approach.

11. I find that Mr. Martinez acted willfully and maliciously by representing himself as a licensed contractor for the purpose and with the intent to induce Mr. and Mrs. Torres to execute the Contract so that he could collect payment from them. The Contract was no more than a fraudulent sham, and Mr. Martinez had no intention of performing the Contract as agreed upon.

## II. Conclusions of Law

### (A) Section 523(a)(2)(A)

Section 523(a)(2)(A) provides, in relevant part, that a discharge under § 727 does not discharge an individual debtor from any debt "for money [or] property...to the extent obtained by false pretenses, a false representation, or actual fraud..." Section 523(a)(2)(A). To prove that a debt is nondischargeable pursuant to § 523(a)(2)(A), a creditor must prove by a preponderance of the evidence that "(1) the debtor made the representations, (2) that at the time he knew they were false, (3) that he made them with the intention and purpose of deceiving the creditor, (4) that the creditor relied on such representations, and (5) the creditor sustained the alleged loss and damage as the proximate result of the representations having been made." Britton v. Price, (In re Britton), 950 F.2d 602, 604 (9th Cir. 1991).

### (1) The Debtor Made the Representations

Contractors are required to be licensed pursuant to the requirements as set forth in Cal. Bus. & Prof. Code § 7000 et seq., known as the Contractors' State License Law. Cal. Bus. & Prof. Code § 7026 defines "Contractor" in relevant part, as "any

8

person who undertakes to or offers to undertake to, or submits a bid to, or does himself...construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building...or other structure..." Cal. Bus. & Prof. Code § 7026 (2007). This section includes the addition to any structure. Mr. Martinez was a contractor within the meaning of Cal. Bus. & Prof. Code § 7026, who failed to comply with the licensing requirement.

California has strict statutory controls on contractor licensing, designed in substantial part for consumer protection. A discharge in bankruptcy is not the only goal of justice. Compare the nondischargeable judgment beyond just compensatory damages at issue in Cohen v. De La Cruz, 523 U.S. 213 (1998) (treble damages and other sanctions for rent control violations).

Section 7031 of the Cal. Bus. & Prof. Code prohibits unlicensed contractors from maintaining actions to recover compensation and additionally permits a party who has utilized the services of an unlicensed contractor to recover all compensation paid to him, even where the person for whom the work was performed knew that the contractor was unlicensed. Hydrotech Sys., Ltd. v. Oasis Waterpark, 52 Cal. 3d 988, 007, 803 P.2d 370, 376 (1991).

Unlike the unlicensed contractor debtor in In re Sabban, ___ B.R. ___ (9th Cir. BAP 2008), BAP No. CC-07-1269-MoPaD, filed February 20, 2008, and ordered published, Mr. Martinez received funds from Mr. and Mrs. Torres but Mr. Martinez did not apply those funds to the Project (except for an insignificant amount).

Mr. Martinez made the false representation that he was a

9

licensed contractor at the initial meeting with Mr. and Mr. Torres prior to the time that Mr. and Mr. Martinez executed the Contract.

### (2) At the Time the Representations Were Made the Debtor Knew They Were False

The fact that Mr. Martinez is not a licensed contractor is not a disputed issue of fact. Mr. Martinez admits that he is not a licensed contractor; he contends that he never represented otherwise. I afford no weight to the testimony of Mr. Martinez and believe that he held himself out as a licensed contractor.

### (3) The Debtor Made the Representations With the Intention and Purpose to Deceive the Creditor

When asked for his license, Mr. Martinez indicated that he did not have it with him. I conclude that Mr. Martinez represented that he was a licensed contractor with the intent and purpose to convey to Mr. and Mrs. Torres that false impression because they would be more likely to hire Mr. Martinez for the Project if he were a licensed contractor as opposed to an unlicensed contractor.

Mr. and Mrs. Torres believed that Mr. Martinez was a licensed contractor and, as a result, they were fraudulently deceived and induced to enter into the Contract. The fact that Mr. Martinez was not a licensed contractor placed them, as consumers, outside of the protections afforded to persons who contract with licensed contractors.

Cal. Bus. & Prof. Code § 7028 provides that it is a misdemeanor for any person to engage in the business or act in the capacity of a contractor in this state without having a

license, with certain exceptions which are inapplicable here. Mr. Martinez was operating outside of the laws of the State of California that have been enacted to regulate the construction trade and deter unlicensed contractors from acting as a contractors. I conclude that Mr. Martinez acted with the intent to deceive Mr. and Mrs. Torres.

Although Mr. Martinez did not represent that he was a "home improvement contractor" as defined in Cal. Bus. & Prof. Code § 7150.1, if he had been a licensed contractor, the Contract would have been subject to the requirements of Cal. Bus. § Prof. Code § 7159, which sets forth the requirements that a "licensed" home improvement contractor must provide in a home improvement contract, including (1) mechanic's lien information, (2) change orders, (3) right to payment and performance bonds, (4) name, business address and license number of the contractor, (5) description of project, (6) limitation of down payment not to exceed $1,000 or 10 percent of the contract price, whichever is less, (7) schedule of progress payments stated in dollars and cents with reference to a description of work to be performed and materials to be supplied, (8) prohibition to collect payment for work not yet completed or materials not yet delivered in 12-point bold-face type, (9) notice regarding liability insurance, (10) notice regarding workers' compensation insurance, (11) 3 and/or 7 day notice of right to cancel, and (12) a notice in at least 12-point typeface regarding a prohibition against using unlicensed contractors and contact information for the California Contractors' State License Board.

The foregoing represents the intent of the legislature

to regulate and control home improvement contracts, similar to the Contract procured by Mr. Martinez, to protect the consumer and provide certain remedies to a consumer when doing business with a licensed home improvement contractor.

(4) <u>The Creditor Relied on Such Representations</u>

Section 523(a)(2)(A) requires justifiable reliance. <u>Field v. Mans</u>, 516 U.S. 59, 71, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995). "Justification is a matter of the qualities and characteristics of the particular plaintiff, and circumstances of the particular case rather than of the application of the community standard of conduct to all cases." <u>Field</u>, 516 U.S. at 71 citing Restatement (Second) of Torts § 540 (1976). "A person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" <u>Id</u>. at 70. The example as set forth in the Restatement is that of a seller of land who represents that the land is free of encumbrances. The Restatement notes that the buyer is justifiable in relying upon the representation notwithstanding that he could have merely walked across the street to the courthouse and discovered that the land was encumbered by a mortgage. <u>Id</u>.

Mr. and Mrs. Torres justifiably relied upon the representation that Mr. Martinez was a licensed contractor when he met with them at their home prior to entering into the Contract. Mr. Martinez had been recommended to Mr. and Mrs. Torres by a co-worker of Mr. Torres, who was pleased with work that Mr. Martinez had performed with respect to an addition to her home. Mr. and Mrs. Torres had not previously contracted for

12

home improvement work and were justified in accepting his representation that he was a licensed contractor as true.

Whether a reasonable person would rely upon the representation of a contractor who states that he is a licensed contractor and who produces no contractor's license or proof thereof is not the inquiry before the Court. Whether it is reasonable for a consumer to accept the representation, or whether it is reasonable for a consumer to initiate an investigation, i.e., check the website of the State Contractors' License Board, is not the standard; the test is a lesser standard, a subjective standard, of whether the reliance was justifiable under the particular facts and circumstances.

Applying the standard of justifiable reliance to the facts of this particular case, I conclude that Mr. and Mrs. Torres were not required to undertake an investigation to determine whether Mr. Martinez was a licensed contractor following his representation.

> (5) The Creditor Sustained the Alleged Loss and Damage as the Proximate Result of the Representations Having Been Made

As stated by the Ninth Circuit in In re Britton:

> Proximate cause is sometimes said to depend on whether the conduct has been so significant and important a cause that the defendant should be legally responsible. But both significance and importance turn upon conclusions in terms of legal policy so that they depend on whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred.

Britton, 950 F.2d at 604 quoting W. Page Keeton et. al., Prosser and Keeton on the Law of Torts § 42 at 273 (5th ed. 1984).

In Britton, the fraud was perpetrated by an office

manager who held himself out as a physician; "Britton's misrepresentation of himself as a physician constituted fraud within the meaning of § 523(a)(2)(A)." Id. Similarly, in this case, Mr. Martinez held himself out as a licensed contractor, and his misrepresentation that he was a licensed contractor satisfies the requirement of fraud pursuant to § 523(a)(2)(A).

The loss and damages incurred by Mr. and Mrs. Torres are a foreseeable consequence of being defrauded by Mr. Martinez, an unlicensed contractor who was operating outside the scope of the laws of the State of California for the licensing of contractors, which are provided to protect consumers. Cal. Bus. & Prof. Code § 7028 provides that it is a misdemeanor to act in the capacity of a contractor without a license. "The purpose of [the] statutory contractor's licensing requirement is to protect the public from perils incident to contracting with incompetent or untrustworthy contractors." Davis Co. v. Superior Court of San Diego County, 1 Cal. App.3d 156, 158, 81 Cal. Rptr. 453 (1969). There is no policy reason to limit the damages sustained by Mr. and Mrs. Torres as a proximate result of Mr. Martinez' fraud.

Accordingly, I find the debt nondischargeable pursuant to § 523(a)(2)(A).

(B) Section 523(a)(6)

Section 523(a)(6) provides, in relevant part, that a discharge under § 727 does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity. Section 523(a)(6).

The willful requirement of § 523(a)(6) 'modifies the word injury, indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S.Ct. 974, 977, 140 L.Ed.2d 90, 95 (1998).

To satisfy the "willful injury" requirement of § 523(a)(6) a plaintiff must demonstrate that "the debtor had a subjective motive to inflict the injury;" or "that the debtor believed the injury was substantially certain to occur as a result of the debtor's conduct." Petralia v. Jercich, (In re Jercich), 238 F. 3d 1202, 1208 (9th Cir. 2001).

The requirement of "malicious injury" is separate from the requirement of "willful." Carillo v. Su (In re Su), 290 F.3d 1140, 1146 (9th Cir. 2002). "A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." Jercich at 1208 quoting In re Bammer, 131 F.3d 788, 791 (9th Cir. 1997)(en banc).

Actual fraud, pursuant to Cal. Civ. Code § 1572, may be committed by a party to the contract with intent to deceive another party to the contract, or to induce the other party to enter the contract. The acts may include "(1) [t]he suggestion of a fact, of that which is not true by one who believes it is not true;... (4) [a] promise made without any intention of performing it;... (5) [o]r any other act fitted to deceive." Id.

I find that Mr. Martinez fraudulently induced Mr. and Mrs. Torres to enter into a sham contract by stating that he was a

15

licensed contractor when he knew that was not true, and he believed that the injury to Mr. and Mrs. Torres was substantially likely to occur based upon his actions. Mr. Martinez deceived Mr. and Mrs. Torres into making progress payments by his misrepresentations about the state of the Project, and although he did so for his own gain rather than with intent to hurt them, injury to Mr. and Mrs. Torres from the loss of their funds was a substantial and foreseeable certainty. The malicious prong of the test as set forth in Jercich is satisfied. Additionally, the evidence supports a finding that Mr. Martinez had no intention to perform to completion the contract as agreed upon, and that he performed only a portion of the work on the Project. The foregoing constitutes a willful and malicious injury pursuant to § 523(a)(6).

Conversion of the property of another also constitutes a "willful and malicious injury within the meaning of § 523(a)(6). Del Bino v. Bailey (In re Bailey), 197 F. 3d 997, 1000 (9th Cir. 1997). Mendoza v. Continental Sales. Co., 140 Cal. App. 4th 1395, 45 Cal. Rptr.3d 525 (Cal. Ct. App. 2006) defined conversion as follows:

> Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property right; and damages. Conversion is a strict liability tort. The foundation of the action rests neither in the knowledge or intent of the defendant.

Mendoza, 140 Cal. App. 4th at 1405 quoting Burlesci v. Peterson, 68 Cal. App 4th 1062, 1066, 80 Cal. Rptr. 2d 704 (1998).

Money is subject to a action for conversion "if a specific sum

capable of identification is involved." <u>Farmers Ins. Exchange v. Zerin</u>, 53 Cal. App. 4th 445, 451, 61 Cal. Rptr. 2d 707 (Cal. Ct. App. 1997) citing <u>Weiss v. Marcus</u>, 51 Cal. App.3d 590, 599, 124 Cal. Rptr. 297 (Cal. Ct. App. 1975).

In this case, the specific amount of funds which Mr. and Mrs. Torres gave to Mr. Martinez is established as $93,000. At the time Mr. Martinez obtained the funds and diverted them to other uses, Mr. and Mrs. Torres had the right to possession of those funds. Mr. Martinez converted the funds for his own purposes and failed to use the funds for the Project. Mr. and Mrs. Torres have satisfied the requirement of a willful and malicious injury. Accordingly, I also find the debt nondischargeable pursuant to § 523(a)(6).

### Damages

The "out of pocket" measure of damages results in an award to a plaintiff of damages based upon what was paid due to fraud. <u>Henry v. Lehman Comm. Paper, Inc.</u>, 471 F.3d 977, 1001 (9th Cir. 2006). Mr. and Mrs. Torres paid Mr. Martinez $93,000. Mr Martinez is entitled to a setoff of $3,000 for material expenditures made in furtherance of the Project, and $2,000 for the labor portion of work which was completed. Accordingly, the debt in the amount of $88,000 is determined to be nondischargeable pursuant to § 523(a)(2)(A) and alternatively under § 523(a)(6).

An award of punitive damages is permitted in nondischargeability cases under § 523(a)(6). <u>Britton</u>, 950 F.2d at 606. Punitive damages may be awarded where fraud, oppression or malice is proven by clear and convincing evidence. Cal. Civ.

Code § 3294.

The California Supreme Court has decided that "evidence of a defendant's financial condition is a prerequisite to an award of punitive damages, and that plaintiff bears the burden of introducing such evidence." Griffin v. Felton (In re Felton), 197 B.R. 881, 891 (9th Cir. 1996) citing Adams v. Murakami, 54 Cal. 3d.105, 284 Cal. Rptr. 318, 813 P.2d 1348 (1991). Mr. and Mrs. Torres included a statement regarding punitive damages in the joint proposed pretrial order, but failed to seek to bifurcate the issues of liability and damages at trial. Because no evidence was presented at trial on the issue of punitive damages, including evidence of Mr. Martinez's financial condition, I will not consider an award of punitive damages. Mr. Martinez filed bankruptcy in 2007; one can assume that the abandonment of this prong of damages by the plaintiffs was a prudent decision. The debt in the amount of $88,000 is determined to be nondischargeable pursuant to § 523(a)(2)(A) and alternatively under § 523 (a)(6).

Counsel for the plaintiffs shall prepare and lodge a judgment in conformance with the foregoing Memorandum of Decision.

Date: FEB 2 6 2008

David N. Naugle
Bankruptcy Judge

| In re<br><br>Hugo MARTINEZ<br><br>Debtor(s). | Chapter 7<br><br>Case No. RS 07-12037 DN |
|---|---|
| Juan and Norma TORRES    Plaintiff(s),<br><br>vs.<br><br>Hugo MARTINEZ    Defendant(s). | Adv No: RS 07-1140 DN |

## CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST LISTED BELOW OR ON THE ATTACHED SERVICE LIST:

I hereby certify that I mailed a copy of this notice and a true copy of the foregoing order to the persons and entities named below or on the attached service list on (specify date): FEB 2 6 2008

Dated: FEB 2 6 2008

JON D. CERETTO
Clerk of the Bankruptcy Court

By: Linda Parnell
    Deputy Clerk

Thomas J. Stolp, Esq.
Rogers, MacLeith & Stolp LLP
10061 Talbert Ave., Ste. 300
Fountain Valley, CA 92708

Stephen R. Wade, Esq.
400 N. Mountain Ave., Ste. 214B
Upland, CA 91786

Arturo Cisneros, Trustee
3403 Tenth St., Ste. 711
Riverside, Ca 92501

U.S. Trustee
3685 Main St., Ste. 300
Riverside, Ca 92501